## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Daran Cohn,                          :
                                     :
                    Plaintiff,       :
                                     :          Civil Action No.
         v.                          :
                                     :
                                     :
Pennsylvania State University        :
                                     :
                    Defendant.       :

## COMPLAINT - JURY TRIAL REQUESTED

### PRELIMINARY STATEMENT

1.     This action is brought under Section 504 of the Rehabilitation Act of 1973 (Section 504), Title III of the Americans with Disabilities Act (ADA), and Pennsylvania contract law.

### JURISDICTION AND VENUE

2.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331, 1343, 1367 and the aforementioned laws.

3.     Venue is proper under 28 U.S.C. § 1391(b).

### PARTIES

4.     Plaintiff is Daran Cohn, who resides at 5653 Como Circle, Woodland Hills, CA 91367.

5.     At all relevant times, Ms. Cohn was enrolled at Pennsylvania State University (PSU).

6.      Defendant is PSU, a public university with campuses across Pennsylvania, including in Philadelphia.

7.      At all relevant times, PSU acted and/or failed to act through its employees, agents, and/or servants for which it is responsible.

8.      PSU receives federal funding.

9.      PSU is a place of public accommodation.

## STATEMENT OF FACTS

### Introduction

10.     Ms. Cohn is an individual with disabilities.

11.     Ms. Cohn has Attention Deficit Hyperactivity Disorder (ADHD).

12.     Ms. Cohn suffers from anxiety.

13.     PSU accepted Ms. Cohn into its Physician Assistant Program in or around 2015.

14.     With reasonable accommodations, Ms. Cohn is qualified to participate in the Physician Assistant Program.

15.     Ms. Cohn enrolled in and began attending the Physician Assistant Program in 2015.

16.     While Ms. Cohn attended PSU, PSU had a duty to provide her reasonable accommodations.

17.     In enrolling at PSU and paying tuition, Ms. Cohn entered a contract with PSU.

2

18.     PSU's student handbooks, financial-aid policies, and website, among other things, set forth the terms of the contract.

19.     Ms. Cohn attended PSU until 2018.

20.     While Ms. Cohn attended PSU, she made numerous requests for reasonable accommodations to address her disabilities.

21.     While Ms. Cohn attended PSU, PSU discriminated against her by denying her reasonable accommodations.

22.     PSU materially breached its contract with Ms. Cohn, causing her to suffer damages and thwarting her education.

23.     PSU made promises to Ms. Cohn that induced her to continue making tuition payments and incurring student debt, but it then broke the promises.

### The Physician Assistant Program

24.     PSU's Physician Assistant Program is a two-year graduate program.

25.     PSU started the program in 2014.

26.     During the first year of the program, students must complete three semesters of classes.

27.     The total cost of attendance during the first year of the program is around $60,000.

28.     During the second year of the program, students must complete three semesters of clinical rotations.

29.     The total cost of attendance during the second year of the program is around $60,000.

## PSU's Contractual Duties

30.     PSU's student handbook for the Physician Assistant Program and its Financial Aid Satisfactory Academic Policy include an array of promises and safeguards for students.

31.     The handbook and policy require PSU to take various measures to assist students and to prevent them from incurring student debt if they are not progressing through the program.

32.     Under the handbook, students cannot proceed to the clinical year of the program if they are not in good academic standing.

33.     Under the handbook, if a student takes a leave of absence, PSU's Academic Review Committee must approve an action plan to assist the student upon her return from leave.

34.     Under the handbook, PSU must make student grades available on an electronic database to keep students apprised of their academic standing.

35.     Under the handbook, PSU must keep students apprised of whether they are on academic probation.

36.     Under the Financial Aid Satisfactory Academic Policy, PSU cannot issue a student financial aid if the student has failed one of her courses or is

4

otherwise not in good academic standing.  PSU can issue aid to the student only after she retakes the course and obtains a passing grade.

### The 2015-2016 Academic Year

37.    Ms. Cohn began the Physician Assistant Program in summer 2015.

38.    Before Ms. Cohn began her first semester, she notified PSU that she has disabilities and requires accommodations.

39.    Ms. Cohn provided PSU medical documentation of her disabilities.

40.    PSU engaged in no interactive process with Ms. Cohn.

41.    During Ms. Cohn's first semester, she received no accommodations.

42.    During Ms. Cohn's first semester, she failed one course, and her grade point average (GPA) was below 3.0.

43.    PSU placed Ms. Cohn on academic probation.

44.    Because Ms. Cohn failed a course and her GPA was below 3.0, PSU and Ms. Cohn's contract barred PSU from distributing additional student loans to Ms. Cohn until she retook the course and improved her GPA, but PSU violated this duty and continued issuing Ms. Cohn loans.

45.    During Ms. Cohn's second semester, she received no accommodations.

46.    During Ms. Cohn's third semester, she received no accommodations.

47.    At the end of the 2015-2016 academic year, Ms. Cohn was not in good academic standing.

48.     Although Ms. Cohn was not in good academic standing, PSU—in violation of the Physician Assistant student handbook—transitioned her to the clinical portion of her program.

### The 2016-2017 Academic Year

49.     Ms. Cohn began the clinical portion of her program in summer 2016.

50.     Ms. Cohn received no accommodations during the summer 2016 semester.

51.     With no accommodations, Ms. Cohn struggled during the summer 2016 semester.

52.     Midway through the summer 2016 semester, PSU forced Ms. Cohn to take a leave of absence based on her struggles and her mental health.

53.     Ms. Cohn did not finish two of her courses during summer 2016.

54.     PSU did not refund Ms. Cohn's tuition for summer 2016.

55.     PSU returned Ms. Cohn from leave in fall 2016.

56.     In violation of the Physician Assistant student handbook, the PSU Academic Review Committee approved no action plan for Ms. Cohn upon her return from leave.

57.     Soon after Ms. Cohn paid her tuition for fall 2016 and began her fall 2016 coursework, PSU dismissed her from the Physician Assistant program based on her summer 2016 grades, her academic probation during the 2015-2016 academic year, and her failure to achieve good academic standing.

6

58.     Ms. Cohn discussed the dismissal with PSU staff, and the staff permitted her to continue in the program and represented to her that her academic probation during the 2015-2016 school year would not affect her ability to graduate from the program.

59.     In fall 2016, PSU agreed to provide Ms. Cohn accommodations for her disabilities.

60.     PSU recognized that Ms. Cohn qualifies for accommodations under the ADA and Section 504, and it represented that it would provide her accommodations in the form of a quiet, isolated setting for exams; a quiet, isolated setting for taking notes during her clinical rotations; and clinical placements near her home and support network.

61.     PSU failed to consistently provide Ms. Cohn's reasonable accommodations.

62.     Ms. Cohn only sporadically received a quiet, isolated setting for exams.

63.     Ms. Cohn did not receive a quiet, isolated setting for taking notes during her clinical rotations.  PSU did not even inform Ms. Cohn's clinical instructors about the accommodation.

64.     PSU failed to appropriately select and arrange Ms. Cohn's clinical placements.

7

65.     During fall and spring 2017, PSU—in violation of the Physician Assistant student handbook—did not make Ms. Cohn's grades available on an electronic database.

66.     During fall and spring 2017, PSU—in violation of the Physician Assistant student handbook—did not keep Ms. Cohn apprised of her academic standing.

67.     Ms. Cohn believed that she achieved satisfactory grades during fall and spring 2017, so she continued assuming student debt and pursuing her Physician Assistant degree.

### The 2017-2018 Academic Year

68.     Ms. Cohn took a second leave of absence during summer 2017.

69.     Before Ms. Cohn took the leave, PSU staff informed her that if she returned from leave in fall 2017 and achieved a 3.0 GPA in fall 2017, she would be eligible for graduation in December 2017.

70.     Relying on PSU staff's representation, Ms. Cohn returned from leave in fall 2017 and incurred more student loans.

71.     In violation of the Physician Assistant student handbook, PSU's Academic Review Committee approved no action plan for Ms. Cohn's transition back from leave.

72.     During fall 2017, PSU failed to consistently provide Ms. Cohn's accommodations.

73.   Ms. Cohn only sporadically received a quiet, isolated setting for exams.

74.   Ms. Cohn did not receive a quiet, isolated setting for taking notes during her clinical rotations.

75.   PSU failed to appropriately select and arrange Ms. Cohn's clinical placements.

76.   After months of not disclosing Ms. Cohn's grades to her, in December 2017, PSU staff did so.

77.   PSU staff informed Ms. Cohn that her cumulative GPA was below 3.0, although she achieved a 3.0 GPA in fall 2017.

78.   PSU staff informed Ms. Cohn that she was not eligible for graduation.

79.   PSU staff informed Ms. Cohn that unless she raised her cumulative GPA above 3.0 in spring 2018, she would be dismissed from the Physician Assistant Program and unable to graduate.

80.   During spring 2018, PSU failed to consistently provide Ms. Cohn's accommodations.

81.   Ms. Cohn only sporadically received a quiet, isolated setting for exams.

82.   Ms. Cohn did not receive a quiet, isolated setting for taking notes during her clinical rotations.

83.   PSU failed to appropriately select and arrange Ms. Cohn's clinical placements.

84.   Near the end of spring 2018, PSU dismissed Ms. Cohn from the Physician Assistant Program.

85.   PSU dismissed Ms. Cohn in part because of her academic probation in 2015 and 2016, even though it had previously promised her that the probation would not impact her ability to graduate.

### PSU's failure to accommodate Ms. Cohn and its contractual breaches have caused her to suffer significant damages.

86.   PSU's violations of Ms. Cohn's rights have caused her to suffer damages in the form of lost tuition payments.  She paid thousands of dollars of tuition but did not receive the educational benefits of that tuition.

87.   PSU's violations of Ms. Cohn's rights have caused her to suffer damages in the form of student debt and interest.  She incurred thousands of dollars of student debt and interest that she would not have incurred but for PSU's violations.

88.   PSU's violations of Ms. Cohn's rights have caused her to suffer damages in the form of costs and expenses that she incurred in attempting to proceed with her education without reasonable accommodations.

89.   PSU's violations of Ms. Cohn's rights have caused her to suffer past and future wage loss and damages by preventing her from working as a physician assistant.  If not for the violations, Ms. Cohn would have graduated and begun employment as a physician assistant.

90.    PSU's violations of Ms. Cohn's rights have caused her to suffer emotional distress, pain and suffering, and loss of life's pleasures.

91.    PSU's violations of Ms. Cohn's rights have caused her to incur attorney's fees and litigation costs.

**COUNT I**
**VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

92.    Ms. Cohn re-alleges the above-stated paragraphs as though fully set forth herein.

93.    Ms. Cohn is an individual with a disability as defined by Section 504 of the Rehabilitation Act insofar as (a) she has a mental or physical impairment that substantially limits one or more major life activities, (b) she has a record of such impairment, or (c) PSU and its agents incorrectly regarded her as having such impairment.

94.    PSU is a place of public accommodation.

95.    PSU is a recipient of federal financial assistance.

96.    Ms. Cohn placed PSU on notice of her disabilities.

97.    PSU knew and/or had notice of Ms. Cohn's disabilities.

98.    Ms. Cohn was otherwise qualified to matriculate at PSU and participate in the activities and benefits offered by PSU to its students and the public.

99.    Ms. Cohn made requests for reasonable accommodations.

11

100.    PSU discriminated against Ms. Cohn on the basis of her disabilities by failing to afford reasonable accommodations even though the accommodations would not have fundamentally altered the nature of PSU's program.

101.    PSU also failed, in good faith, to initiate and/or engage in an interactive process with Ms. Cohn to determine reasonable accommodations for her so that she would not be excluded from the participation in, be denied the benefits of, or otherwise be subjected to discrimination by PSU.

102.    PSU could have accommodated Ms. Cohn but for the lack of its good faith.

103.    Had PSU provided Ms. Cohn with reasonable accommodations, she would have graduated from PSU.

104.    PSU discriminated against Ms. Cohn because of her disabilities.

105.    As a direct and proximate result of PSU's discrimination, PSU violated Section 504 of the Rehabilitation Act.

106.    As a direct and proximate result of PSU's discrimination, PSU denied Ms. Cohn participation in, denied her the benefits of, and/or subjected her to discrimination.

107.    As a direct and proximate result of PSU's discrimination, PSU wrongfully dropped Ms. Cohn from its rolls, and as a result, she suffered the loss of educational opportunity.

12

108.    As a direct and proximate result of PSU's discrimination, Ms. Cohn has incurred financial expenses, including tuition payments, loan interest, and attorney's fees and litigation costs.

109.    As a direct and proximate result of the PSU's discrimination, Ms. Cohn has incurred past and future wage loss.

110.    As a direct and proximate result of PSU's discrimination against Ms. Cohn and PSU's violation of Section 504 of the Rehabilitation Act, Ms. Cohn has sustained emotional distress, pain and suffering and loss of life's pleasures.

111.    PSU's discrimination was willful and/or intentional.

WHEREFORE, Plaintiff Daran Cohn demands judgment and declaratory judgment against Defendant Pennsylvania State University plus all remedies available under Section 504 of the Rehabilitation Act, including but not limited to, damages as would fully compensate Ms. Cohn under Section 504 of the Rehabilitation Act; equitable relief; attorney's fees and litigation costs; and all other such relief that this Court deems appropriate.

## COUNT II
## VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

112.    Ms. Cohn re-alleges the above-stated paragraphs as though fully set forth herein.

113.    Ms. Cohn is an individual with a disability as defined by the Americans with Disabilities Act insofar as (a) she has a mental or physical

impairment that substantially limits one or more major life activities, (b) she has a record of such impairment, or (c) PSU and its agents incorrectly regarded her as having such impairment.

114.   PSU owns, leases, or operates a place of public accommodation.

115.   PSU is a place of public accommodation.

116.   PSU knew and/or had notice of Ms. Cohn's disabilities.

117.   Ms. Cohn was otherwise qualified to matriculate at PSU and participate in the activities and benefits offered by PSU to its students and the public.

118.   Ms. Cohn made requests for reasonable accommodations.

119.   PSU discriminated against Ms. Cohn on the basis of her disabilities by failing to afford reasonable accommodations even though the accommodations would not have fundamentally altered the nature of PSU's program.

120.   PSU also failed, in good faith, to initiate and/or engage in an interactive process with Ms. Cohn to determine reasonable accommodations for her so that she would not be excluded from the participation in, be denied the benefits of, or otherwise be subjected to discrimination by PSU.

121.   PSU could have accommodated Ms. Cohn but for the lack of its good faith.

122.   Had PSU provided Ms. Cohn with reasonable accommodations, she would have graduated from PSU.

123.   PSU discriminated against Ms. Cohn because of her disabilities.

124.   As a direct and proximate result of PSU's discrimination, as described above, PSU violated the Americans with Disabilities Act.

125.   As a direct and proximate result of PSU's discrimination, PSU denied Ms. Cohn participation in, denied her the benefits of, and/or subjected her to discrimination.

126.   As a direct and proximate result of PSU's discrimination, PSU wrongfully dropped Ms. Cohn from its rolls, and as a result, she suffered the loss of educational opportunity.

127.   As a direct and proximate result of PSU's discrimination, Ms. Cohn has incurred financial expenses, including tuition payments and attorney's fees and litigation costs.

128.   As a direct and proximate result of the PSU's discrimination, as described above, Ms. Cohn has incurred past and future wage loss.

129.   As a direct and proximate result of PSU's discrimination against Ms. Cohn and PSU's violation of the Americans with Disabilities Act, Ms. Cohn has sustained emotional distress, pain and suffering and loss of life's pleasures.

130.   PSU's discrimination was willful and/or intentional.

WHEREFORE, Plaintiff Daran Cohn demands judgment and declaratory judgment against Defendant Pennsylvania State University plus all remedies available under the Americans with Disabilities Act, including but not limited to,

15

damages as would fully compensate Ms. Cohn under the Americans with Disabilities Act; equitable relief; attorney's fees and litigation costs; and all other such relief that this Court deems appropriate.

**COUNT III**
**BREACH OF CONTRACT**

131.   Ms. Cohn re-alleges the above-stated paragraphs as though fully set forth herein.

132.   PSU had a contractual duty to comply with the terms of the Physician Assistant student handbook.

133.   PSU breached its duty by failing to comply with the terms.

134.   The breach was material.

135.   As a result of the breach, Ms. Cohn has incurred damages.

136.   PSU had a contractual duty to comply with the terms of its Financial Aid Satisfactory Academic Progress Policy.

137.   PSU breached its duty by failing to comply with the policy.

138.   The breach was material.

139.   As a result of the breach, Ms. Cohn has incurred damages.

140.   PSU otherwise breached its contractual duties to Ms. Cohn.

141.   The breaches were material and caused Ms. Cohn to suffer damages.

WHEREFORE, Plaintiff Daran Cohn demands judgment and declaratory judgment against Defendant Pennsylvania State University; damages resulting from its contractual breaches; compensatory damages; consequential damages;

16

specific performance, including removal from her academic record of the failing grades that she received as a result of PSU's breaches and recognition of all course credits that she has obtained thus far; attorney's fees and litigation costs; and all other such relief that this Court deems appropriate.

**COUNT IV**
**PROMISSORY ESTOPPEL**

142.   Ms. Cohn re-alleges the above-stated paragraphs as though fully set forth herein.

143.   In 2016 and 2017, PSU promised Ms. Cohn that she was on track to graduate.

144.   Ms. Cohn relied on the promise to her detriment; she continued in the Physician Assistant Program and assumed student debt.

145.   PSU breached the promise.

146.   The breach cause Ms. Cohn to suffer damages.

147.   PSU promised Ms. Cohn that her academic probation would not prevent her from graduating.

148.   Ms. Cohn relied on the promise to her detriment; she continued in the Physician Assistant Program and assumed student debt.

149.   PSU breached the promise.

150.   The breach caused Ms. Cohn to suffer damages.

WHEREFORE, Plaintiff Daran Cohn demands judgment and declaratory judgment against Defendant Pennsylvania State University; damages resulting

from its promises; compensatory damages; consequential damages; attorney's fees and litigation costs; and all other such relief that this Court deems appropriate.

Daran Cohn

*Pro se plaintiff*

Dated: June 28, 2019